UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KEVIN CULTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:05-CV-01059 JCH |
| ) | |
| MISSOURI DEPARTMENT OF ) | |
| CORRECTIONS, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Missouri Department of Corrections' ("MDOC") Motion for Summary Judgment (Doc. No. 31), filed October 19, 2006. The matter is fully briefed and ready for a decision.

## **BACKGROUND**

For the past five years, MDOC has employed Plaintiff as a Correctional Officer I at the Potosi Correctional Center ("PCC"). (Mot. for Sum. J., Doc. No. 31 Ex. A at pg. 6). When Plaintiff began his employment, he signed an "Employee Consent" form stating that he was "willing to work any shift, any assignment, with any days off." (Id. at Ex. B). Although he has worked at various posts during his employment with MDOC, his job title has remained Correctional Officer I. (Memo. in Opposition, Doc. No. 34 ¶ 4).

In March 2003, Plaintiff bid[1] and assumed the post of armorer. (Id. at ¶ 5-6). The armorer's

---

[1] "To bid" a position means that when a job opens at the PCC, interested employees submit a form detailing their experience and their interest in the position. (Doc. No. 31 at ¶ 6).

1

duties include maintaining the weapons of the PCC, taking monthly inventories of the armory, and making mail runs. (Id. at ¶ 7-8, 11). Upon becoming armorer, Plaintiff's pay remained unchanged and his days off were Saturday and Sunday. (Id. at ¶ 9-10).

In November 2003, questions about Plaintiff's job performance arose. First, Plaintiff returned egregiously late from a mail run. (Doc. No. 31 Ex. W). Second, Major Richard Bouchard ("Bouchard") noticed that he had not received an inventory of the armory since March 2003. (Id.). Accordingly, Bouchard ordered Plaintiff and Captain Garry Branch ("Branch") to complete a joint inventory, which revealed "several discrepancies." (Id.). After this inventory, both Branch and Captain Greg Dunn recommended Plaintiff's removal from the armorer position. (Id. at Ex. U,V). Bouchard removed Plaintiff from the armorer position in December 2003[2] because of the inventory discrepancies, his extreme tardiness in one mail run, complaints about the weapons being too dirty or oily, and observations by several staff members that he had been "spending an excessive amount of time in the records office talking with a female employee."[3] (Id.). Plaintiff was reassigned to a temporary utility position, meaning MDOC posted him wherever it had a need. (Supp. Ex., Doc. No. 33, Ex. Y).

Plaintiff asserts his reassignment occurred for a different reason. In 2002, Plaintiff began dating Mary Propst ("Propst"), also an employee at PCC. (Doc. No. 31, Ex. EE). According to Propst, Branch had sexually harassed her since 2002 by making sexual comments, kissing her, and

---

[2]Plaintiff alleges that Bouchard told him he was a good armorer, but that he was not a "good fit" for the position. (Doc. No. 34 Ex A, Doc. No. 31 Ex. A).

[3]Plaintiff states that he turned in inventories to the business office, oiled the weapons properly, and many of the discrepancies in the November 2003 joint inventory were out of his control. (Id. at Ex. 1 ¶ 1-6).

2

creating a "hostile work environment for both COI Culton and [her]." (Id.). In November 2003, Plaintiff states that he told Branch to "move on" after Branch was "sexually aggressive" towards Propst and also told Branch that he would tell Branch's wife of the harassment unless Branch stopped making sexual advances towards Propst. (Doc. No. 34, Ex. A). Plaintiff believes that he was reassigned because he confronted Branch. There is no evidence that Captain Dunn or Major Bouchard knew of any personal conflicts between Branch and Plaintiff during November-December 2003.

Plaintiff maintains that moving from armorer to temporary utility duty is viewed as a demotion because it requires less skill,[4] is more dangerous due to increased interaction with inmates, and has less consistent hours. (Doc. No. 34 Ex. 1 at ¶ 9-11). Plaintiff filed multiple grievances about his reassignment. The first two grievances, filed in February 2004 and March 2004, do not mention sexual harassment. (Doc. No. 31, Ex. Q, R). On April 26, 2004, Plaintiff filed the first grievance mentioning retaliation for reporting sexual harassment.[5] (Id. at Ex. S).

Plaintiff remained in the temporary utility position until September 8, 2004. (Doc. No. 34 ¶ 17-21). From December 2003 to June 15, 2003, Plaintiff worked on the day shift and his days off were Thursday and Friday. (Id. at ¶ 17-18). From June 15, 2003 to September 8, 2004, Plaintiff worked the night shift and his days off changed to Monday and Tuesday. (Id. at ¶ 19). On September 8, 2004, Plaintiff bid, and assumed, the position of Housing Unit II officer. (Id. at ¶ 21-23). Upon assuming this position, he worked the day shift and his off days were Thursday and Friday. (Id.).

---

[4]Defendant contends that it requires more skills because of the varying jobs an officer must know how to perform. (Doc. No. 33 Ex. Y ¶ 7).

[5]Although unclear, it appears Propst alerted her supervisors of Branch's harassment on April 12, 2004. (Id. at Ex. EE).

During 2004-2005, MDOC docked Plaintiff's pay on multiple occasions because he allegedly misused sick leave. MDOC normally only requires one phone call alerting them of an employee's sickness as long as the employee tells MDOC how many days he will miss of work. (Id. at Ex. AA). Plaintiff asserts that when he called in sick on April 17, 2004, he told MDOC he would be out until April 21, 2004. (Id. at Ex. 4). Defendant asserts that Plaintiff only called in sick for April 17, 2004. (Doc. No. 31 Ex. Z). In June 2004, Plaintiff was docket eight hours of pay for not calling in sick on April 18, 2004. (Id. at Ex. F).

On September 25-26, 2004, Plaintiff called in sick because of a migraine headache. (Doc. No. 34 Ex. 1). On September 26th, Plaintiff admits driving thirteen miles to attend a civil war re-enactment to check on his horse that he loaned to a friend. (Id.). One of his supervisors, Michael Lawson ("Lawson"), saw him there. (Id.). Defendant has evidence that Plaintiff admitted to Mark Browers ("Browers"), another officer, that he requested sick leave because he wanted to participate. (Doc. No. 31 Ex. B). Plaintiff alleges that Browers lied about what he had said and also stated that Lawson admitted that he "didn't know it would go this far.... [he] just wanted to blackmail [Plaintiff]."[6] (Doc. No. 34, Ex. 6). MDOC's general rule is that if an employee calls in sick and is later seen in public, it cannot be assumed that the employee was not sick. Rather, the superintendent may conduct further inquiry and then make a change from sick leave to leave without pay, if appropriate. (Doc. No. 31 Ex. M). Don Roper ("Roper"), the superintendent at PCC, had his staff investigate and, relying on their determination, rejected Plaintiff's September 25-26, 2004 request for sick pay. (Id.).

The final incident of note occurred between October 2-6, 2004. Plaintiff asked for sick leave

---

[6]The parties have not adequately informed the Court about what Lawson allegedly tried to blackmail Plaintiff.

4

due to stress. (Id. at Ex. I). Plaintiff's sole documentation was that he saw counselors or psychologists on October 5-6, 2004. (Id.). Roper determined that this leave of absence was not a qualified event under the Family Medical Leave Act for October 2-4, 2004 and docked Plaintiff's pay. (Id. at Ex. DD). Plaintiff alleges that this decision violated the normal policy that a doctor's excuse was only required if an officer missed more than forty hours of work. (Id. at Ex. M pg. 26-28). Roper explained that he required Plaintiff to provide a doctor's note for all five days because he believed Plaintiff was using too many unscheduled absences. (Id. at pg. 26). George Lombardi ("Lombardi"), the Director of the Division of Adult Institutions, suspended Plaintiff without pay from January 29, 2005 until February 2, 2005 for his taking of "unauthorized" sick leave on September 25-26, 2004 and October 2-4, 2006. (Id. at Ex. N).

Plaintiff filed this instant action on July 7, 2005 (Doc. No. 1) and amended his complaint on February 21, 2006.[7] (Doc. No. 16). Plaintiff alleges that Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) et seq by retaliating against him for reporting the sexual harassment of Propst by Branch. (Id. at ¶ 9-11). Defendant allegedly retaliated in the following ways: intense job scrutiny, lost wages, transferring him to a lower skill job, diminishing his performance reviews, denying customary increases in salary, denying customary opportunities for promotion, increased danger when dealing with inmates, and likely discharge if promoted. (Id. at ¶ 11). Defendant filed this motion for summary judgment on October 19, 2006.

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers

---

[7]Before filing this action, Plaintiff filed an action with the Equal Employment Opportunity Commission and filed his case within ninety days of receiving his right to sue letter.

5

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

## **DISCUSSION**

Title VII prohibits employers from discriminating against an employee who "has opposed any practice made an unlawful employment practice by this subchapter" or who "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Because Plaintiff has no direct evidence of retaliation, his claim

6

is analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Twymon v. Wells Fargo & Co., 462 F.3d 925, 936 (8th Cir. 2006). Under this framework, Plaintiff has the initial burden of establishing a prima facie case of retaliation. Clark v. Johanns, 460 F.3d 1064, 1067 (8th Cir. 2006). Once Plaintiff satisfies this burden, Defendant must offer a legitimate, non-discriminatory reason for the employment action. Quick v. Wal-Mart Stores, Inc., 441 F.3d 606, 610 (8th Cir. 2006). The burden of production then returns to Plaintiff to show that the employer's reason was a pretext for discrimination. Id.

To establish a prima facie case of retaliation, Plaintiff must present evidence that 1) he engaged in a protected activity; 2) an adverse employment action was taken against him; and 3) a causal connection exists between the two. Thompson v. Bi-State Dev. Agency, 463 F.3d 821, 826 (8th Cir. 2006). The threshold of proof to establish a prima facie case is "minimal." Logan v. Liberty Healthcare Corp., 416 F.3d 877, 881 (8th Cir. 2005), citing Young v. Warner-Jenkinson Co., 152 F.3d 1018, 1022 (8th Cir. 1998). Plaintiff has brought evidence that he engaged in a protected activity; specifically, he confronted Branch about his sexual harassment and complained in a grievance that Branch was harassing Propst. West v. Marion Merrell Dow, Inc., 54 F.3d 493, 496 (8th Cir. 1995) (holding employer may not retaliate against employee for bringing charge of ... sex discrimination).

The Supreme Court has recently clarified the meaning of adverse employment action. Burlington N. & Sante Fe Ry. Co. v. White, --- U.S. ---, 126 S. Ct. 2405, 165 L. Ed 2d 345 (2006). According to the Supreme Court, a plaintiff must show that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 2415.

(internal quotations and citations omitted). It also affirmed a jury's verdict that found reassignment of duties was an adverse employment action where the previous job had more prestige, was considered better, and was less arduous. Id. at 2416. The Eighth Circuit has held that evidence of a "considerable downward shift in skill level required to perform [the employee's] new job responsibilities" is an adverse employment action. Turner v. Gonzales, 421 F.3d 688, 697 (8th Cir. 2005), quoting Meyers v. Neb. Health & Human Serv., 324 F.3d 655, 660 (8th Cir. 2003).

Upon consideration, Plaintiff fails to make a prima facie showing that most of the alleged adverse employment actions actually occurred. Plaintiff has made a prima facie showing that his reassignment was an adverse employment action because it is considered less prestigous and more arduous due to increased inmate interaction. Second, Plaintiff has made a prima facie showing that docking his pay was an adverse employment action. See Wenzel v. Missouri-Am. Water Co., 404 F.3d 1038, 1042 (8th Cir. 2005) (holding material change in salary is an adverse employment action). Plaintiff, however, has failed to present any evidence that he received diminished performance reviews, was denied customary increases in salary, denied customary opportunities for promotion, and would be likely discharged if promoted. Accordingly, only Plaintiff's lost wage and demotion claims survive this stage of the analysis.

Plaintiff also must show causation to make a prima facie case. To prove causation, Plaintiff must show that an employer's retaliatory motive played a part in the adverse employment action. Hughes v. Stottlemyre, 454 F.3d 791, 797 (8th Cir. 2006). Evidence that gives rise to an inference of retaliatory motive is sufficient to prove a causal connection. Kipp v. Mo. Highway & Transp. Comm'n, 280 F.3d 893, 897 (8th Cir. 2002). Courts consider more than just temporal proximity when making this assessment. Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999) (en

banc) (temporal connection alone is usually not enough); See Robinson v. Potter, 453 F.3d 990, 994 (8th Cir. 2006) (looking to decision maker's awareness of plaintiff's claim), Kasper v. Federated Mut. Ins. Co., 425 F.3d 496, 503 (8th Cir. 2005) (examining plaintiff's previous, and overall, performance); Cheshewalla v. Rand &Son Const. Co., 415 F.3d 847, 852 (8th Cir. 2005) (holding employer's downsizing is relevant).

Plaintiff has not shown causation as it pertains to his reassignment. No evidence exists that Bouchard based his decision on anything other than the inventory discrepancies, complaints about Plaintiff's weapons maintenance, and his mail run problem.[8] Additionally, no evidence indicates Bouchard relied on inaccurate or falsified information. Although Plaintiff allegedly told Bouchard of the harassment at the meeting to transfer him, this fact does not create any evidence of causal connection. This statement came at the end of the conversation, after Bouchard made his decision to reassign Plaintiff. See Brower v. Runyon, 178 F.3d 1002, 1006-07 (8th Cir. 1999) (holding that termination two days after visit to EEOC by plaintiff was not causally connected because defendant did not know about visit). The Court holds that no reasonable jury could find a causal connection between the reassignment and the sexual harassment allegations.

Plaintiff's evidence regarding his lost wages makes a prima facie showing of causation. Plaintiff's evidence shows that one of his co-workers may have tried to "blackmail" him and that Defendants may have inappropriately applied their policies to him. Furthermore, by the time these decisions were made, Plaintiff's supervisors were likely aware of his sexual harassment allegations.

---

[8]To the extent that Bouchard was wrong about Plaintiff's performance, that claim is not cognizable under a Title VII retaliation claim. See Scroggins v. Univ. of Minnesota, 221 F.3d 1042, 1045 (8th Cir. 2000).

9

This evidence meets the "minimal" showing needed to create an inference of retaliatory motive.

Defendant has offered a non-retaliatory, legitimate reason, the misuse of sick leave, as the reason for docking Plaintiff's pay. See Logan, 413 F.3d at 881. Thus, the burden shifts back to Plaintiff to show that this reason was a pretext for discrimination. Making a showing of pretext requires "more substantial evidence than it takes to make out a prima facie case, ... because unlike evidence establishing a prima facie case, evidence of pretext ... and retaliation is viewed in light of the employer's justification." Id. (citations omitted). To carry this burden, the employee must show that the proffered reason was "unworthy of credence." Wallace v. Sparks Health Sys., 415 F.3d 853, 860 (8th Cir. 2005), quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000). An employee can demonstrate pretext by showing the employer meted out more lenient treatment to similarly situated employees who did not engage in the protected activity. Salitros v. Chrysler Corp., 306 F.3d 562, 570 (8th Cir. 2002). Another method is to show that the employer's proffered reason has no basis in fact. Smith v. Allen Health Sys., Inc., 302 F.3d 827, 835 (8th Cir. 2002).

Upon consideration, the Court finds that Plaintiff has not made the necessary showing of pretext. Although Plaintiff has evidence that his supervisors did not properly follow the sick leave policy, he has presented no tangible evidence that his supervisors properly followed the policy with other similarly situated employees. See Logan, 416 F.34d at 883, citing Smith, 302 F.3d at 835. Additionally, Plaintiff asserts Lawson tried to "blackmail" him; however, he has not connected this alleged blackmail to the sexual harassment complaint. The nature of Plaintiff's job also undermines any assertion of pretext. The Eighth Circuit recently held that the importance of always having a fully staffed shift at a mental health facility undermines a claim of pretext by a guard punished for her absences, because unexpected absences cause major staffing disruptions. See Long, 416 F.3d at 883.

The Court finds this rationale equally compelling for the staffing of guards at a state prison.

Additionally, the Court does not find Plaintiff's justifications and denials about his alleged absences persuasive. Grey v. City of Oak Grove, 396 F.3d 1031, 1035 (8th Cir. 2005) (justifications and denials not evidence of fabricated charges). As the Eighth Circuit explains, the question is "whether [MDOC's] articulated reason for [docking Plaintiff's pay] was a pretext for retaliation, not whether [Plaintiff] actually did what he was accused of doing or whether the discharge was warranted." Id. Thus, the relevant inquiry is "whether [MDOC] believed [Plaintiff] was guilty of the conduct justifying [his docking of pay]." Scroggins v. Univ. of Minnesota, 221 F.3d 1042, 1045 (8th Cir. 2000). The evidence before the Court shows Roper and Lombardi, the supervisors who decided to dock his pay, believed Plaintiff abused sick leave, and no evidence exists to show that their decisions were motivated by pretext. The Court finds that a reasonable jury could not return a verdict for Plaintiff and will grant Defendant's Motion for Summary Judgment.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. No. 31) is **GRANTED**, and Plaintiff's claims are dismissed with prejudice. An appropriate Judgment will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike Plaintiff's Exhibit 9 (Doc. No. 36) is **DENIED** as moot.

Dated this 7th day of December, 2006.

/s/ Jean C. Hamiton
UNITED STATES DISTRICT JUDGE